**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DANIEL J. MOORE**
Laszynski & Moore
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jan 31 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIEN CLAYTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1102-CR-138 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1002-FA-5

**January 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Brien Clayton appeals his conviction for class A felony dealing in cocaine. He asserts that the trial court abused its discretion in admitting expert opinion testimony regarding his intent to deliver the cocaine. He further asserts that the State presented insufficient evidence to support his conviction. Finding any error in the admission of the opinion testimony harmless and also finding sufficient evidence to support the conviction, we affirm.

**Facts and Procedural History**

On February 4, 2010, Detective Bradley Curwick of the Lafayette Police Department was working undercover and posing as an individual named "Travis." He telephoned Clayton, also known as "Smoke," and asked if he could purchase crack cocaine. Clayton stated that he was out of town. Thereafter, on February 9, 2010, Detective Curwick, still posing as "Travis," arranged to go with a woman named Vivian Hurst and purchase $180 worth of crack cocaine from Clayton. Hurst had purchased cocaine from Clayton approximately five times in early February. Before Detective Curwick met with Hurst, police officers photocopied bills totaling $200 that Curwick could give to Hurst in order to purchase the crack cocaine. Detective Curwick was wired with a transmitter so that other officers could hear what was transpiring and so that the transaction could be recorded.

Later that day, Detective Curwick picked up Hurst and the two traveled to Clayton's residence in Lafayette. Detective Curwick parked in the alley behind the residence and gave the buy money to Hurst. Hurst entered the residence and returned approximately two minutes later. Upon her return, Hurst spit three rocks of crack cocaine out of her mouth and handed

them to Detective Curwick.  Each rock of crack cocaine was individually packaged in a "corner bag" that had been knotted and tied.  State's Ex. 15.  The total weight of the three rocks was 2.11 grams.

After Detective Curwick and Hurst drove away, surveillance officers stopped the vehicle and arrested Hurst.  As officers were obtaining a search warrant for the residence, surveillance officers who had remained at the residence observed Clayton and another individual exit the residence and drive to a nearby supermarket.  Officers arrested Clayton.  A search incident to arrest revealed two prepaid cell phones, a Western Union receipt, and $393 in cash.  Ninety dollars of the cash matched serial numbers from the money that had been supplied to Hurst to buy the crack cocaine.  During the subsequent search of the residence, officers discovered a Styrofoam cup with a plastic baggie containing a white rock-like substance inside.  The substance was later determined to be crack cocaine with a total weight of 21.95 grams.  Tr. at 251.

On February 11, 2010, the State charged Clayton with class B felony conspiracy to commit dealing in cocaine, class B felony dealing in cocaine, class A felony dealing in cocaine, class D felony possession of cocaine, and class D felony maintaining a common nuisance.  The State also subsequently charged Clayton with being a habitual substance offender and a habitual offender.  Following a jury trial on December 14 and 15, 2010, the jury found Clayton guilty as charged.  A bench trial was held for the habitual offender phase and Clayton was also found guilty of being a habitual offender.  During sentencing, the trial court merged four of Clayton's convictions into the class A felony dealing count and declined

to enter judgment of conviction on the habitual substance offender count. The court sentenced Clayton to thirty years for class A felony dealing in cocaine, enhanced by an additional thirty years for being a habitual offender. The court ordered fifty years executed time with the remaining ten years served on probation. This appeal ensued.

**Discussion and Decision**

Clayton first contends that the trial court abused its discretion in admitting the opinion testimony of West Lafayette Police Detective Jonathon Eager regarding the intended use of the cocaine found in Clayton's residence. Based upon Detective Eager's training and experience, the State offered Detective Eager's opinion testimony "as an expert in the field of narcotics investigation, trafficking, and drug culture." Tr. at 275. Detective Eager testified that dealers generally have larger amounts of cocaine than users, and that 21.95 grams of cocaine would not be an amount possessed by a mere user. *Id.* at 284. Then, in addition to asking Detective Eager to testify generally regarding the amount of drugs typically possessed by dealers as opposed to users, the State asked Detective Eager to render his opinion specifically regarding State's Exhibit Number 9, which consisted of the precise 21.95 grams of crack cocaine seized from Clayton's residence. Defense counsel objected to Detective Eager rendering an opinion regarding Clayton's intent regarding the specific drugs seized. The trial court overruled the objection and permitted Detective Eager to testify "there's no doubt that this was intended to be dealt and that it was not possessed by a user. Absolutely not." Tr. at 287. Detective Eager went on to opine that the specific packaging of the drugs in Exhibit Number 9 indicated an intent to deal or deliver. *Id.* at 288-89.

4

On appeal, Clayton argues that Detective Eager was not a qualified expert witness under Indiana Evidence Rule 702 and also, that his testimony went beyond what is permissible opinion testimony. The trial court has broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only for an abuse of that discretion. *Edwards v. State*, 930 N.E.2d 48, 49-50 (Ind. Ct. App. 2010), *trans. denied*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *McClendon v. State*, 910 N.E.2d 826, 832 (Ind. Ct. App. 2009), *trans. denied*.

Regarding Detective Eager's qualifications as an expert witness, Clayton asserts that the trial court should have treated Detective Eager as a "skilled" witness rather than an "expert" witness.[1] By treating Detective Eager as an expert witness, Clayton asserts that the trial court added weight to Detective Eager's opinion testimony. But, Clayton did not object to Detective Eager's qualifications as an expert witness. Consequently, Clayton has waived these arguments on appeal. A party cannot assert on appeal an objection not raised at trial. *Craig v. State*, 883 N.E.2d 218, 220 (Ind. Ct. App. 2008). Arguments raised for the first time on appeal are waived and will not be considered. *Whitfield v. State*, 699 N.E.2d 666, 669 (Ind. Ct. App. 1998), *trans. denied.*

Clayton maintains that Detective Eager's opinion testimony regarding the intended use of the 21.95 grams of cocaine found in his residence went beyond what is permissible

---

[1] "A 'skilled' witness is defined as 'a person with a degree of knowledge short of that sufficient to be declared an expert under Indiana Rule 702, but somewhat beyond that possessed by ordinary jurors.'" *Davis v. State*, 791 N.E.2d 266, 268 (Ind. Ct. App. 2003) (quoting *O'Neal v. State*, 716 N.E.2d 82, 88-89 (Ind. Ct. App. 1999)), *trans. denied*.

opinion testimony. Clayton concedes that Detective Eager was properly permitted to testify generally as to what amounts of drugs are typically possessed by drug dealers as opposed to drug users. As acknowledged by Clayton, this Court has reasoned that such testimony may be helpful in determining the issue of intent to deliver because the testimony can establish "the distinct characteristics that differentiate between a drug user and a drug dealer." *Davis*, 791 N.E.2d at 269. However, Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Indeed, we have stated,

> a police officer or law enforcement official who is offered and qualified as an expert in the area of drugs, drug trade, drug trafficking, etc., may offer testimony as to whether particular facts tend to be more or less consistent with dealing in drugs. However, the expert may not make conclusion as to whether the defendant is a dealer or whether the defendant had the intent to deal or deliver …. In essence, the expert may comment on the facts of the case, but must refrain from making any conclusions as to the defendant's intent, guilt, or innocence.

*Scisney v. State*, 690 N.E.2d 342, 346 (Ind. Ct. App. 1997), *aff'd in relevant part*, 701 N.E.2d 847 (Ind. 1998). We agree with Clayton that Detective Eager's opinion testimony here, which specifically addressed State's Exhibit 9, went too far regarding Clayton's intent to deliver.

Nevertheless, any error in the admission of Detective Eager's testimony was harmless. "Error is harmless if 'the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.'" *Tolliver v. State*, 922 N.E.2d 1272,

6

1278 (Ind. Ct. App. 2010) (quoting *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000)), *trans. denied*. As we will next address in the context of the sufficiency of the evidence, we are confident that the State presented substantial independent evidence of Clayton's guilt such that there is no substantial likelihood that the questioned opinion testimony contributed to his conviction for dealing in cocaine.

Clayton challenges the sufficiency of the evidence to support his conviction. When reviewing a claim of insufficient evidence, we consider only the probative evidence and reasonable inferences that support the verdict. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We likewise consider conflicting evidence in the light most favorable to the verdict. *Id*. We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. *Id*.

To convict Clayton of dealing in cocaine as a class A felony, the State was required to prove that he knowingly or intentionally possessed, with the intent to deliver, pure or adulterated cocaine in an amount weighing three grams or more. Ind. Code § 35-48-4-1. Detective Curwick traveled to a residence with Hurst in order to purchase cocaine from Clayton. The State presented evidence that Clayton rented that residence. Hurst entered the residence under surveillance and purchased three rocks of cocaine. Hurst identified Clayton as the individual who sold her cocaine on that date as well as at least five times earlier in the month of February. When Clayton was later arrested, he possessed some of the marked purchase money from Hurst, two prepaid cell phones, and a wire transfer receipt. During a subsequent search of the residence where the buy occurred, 21.95 grams of cocaine, divided

into individual rocks, was found. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. *Davis*, 791 N.E.2d at 270. The State presented sufficient evidence to prove that Clayton knowingly possessed with intent to deliver cocaine in an amount weighing three grams or more.

Clayton contends that Hurst was the only witness to any drug transactions involving Clayton and that Hurst lacks credibility. Clayton further asserts that although he was indeed the tenant who rented the residence in which the cocaine was found, another individual also lived at the residence and the cocaine could have belonged to him. Clayton's arguments are merely an invitation for us to reweigh the evidence and reassess witness credibility, tasks not within our prerogative on appeal. The State presented sufficient evidence to sustain Clayton's conviction for class A felony dealing in cocaine, and any error in the admission of Detective Eager's opinion testimony was harmless in light of the substantial evidence of guilt. Therefore, we affirm Clayton's conviction.[2]

Affirmed.

MAY, J., and BROWN, J., concur.

---

[2] Clayton does not challenge the sufficiency of the evidence to sustain the habitual offender finding.

8